UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM NEWEL BROCKBRADER,<br><br>Defendant. | Case No. 1:12-cr-00156-BLW<br><br>MEMORANDUM DECISION AND ORDER |

### INTRODUCTION

Before the Court are two motions to dismiss the Superseding Indictment (Dkts. 61 & 62) filed by Defendant William Newel Brockbrader. On November 14, 2012, the Court conducted a hearing and took the motions under advisement. For the reasons set forth below, the Court will deny the motions to dismiss the Superseding Indictment.

### BACKGROUND

In December 1997, the defendant, William Newel Brockbrader, was convicted by general court martial for the crimes of Sodomy, Carnal Knowledge with a Child Under Age Sixteen, and Indecent Acts with a Child Under Age Sixteen, violations of the Uniform Code of Military Justice, Articles 125, 120, and 134. *Superseding Indictment* at 2, Dkt. 30. On April 21, 1998, a military judge sentenced him to dishonorable discharge,

MEMORANDUM DECISION AND ORDER - 1

confinement for 11 years, forfeiture of all pay and allowances, and a reduction in pay grade. *General Court-Martial Order Number 18-98* at 1, Ex. A to Motion to Dismiss on Statutory Grounds, Dkt. 61-2. The confinement and forfeiture were suspended to allow Mr. Brockbrader to participate in a sexual abuse therapy program. *Id.* Brockbrader was released from custody in June 2001.

When Brockbrader was released, he signed a "Prisoner's Acknowledgement of Sex Offender Registration Requirements," in which he acknowledged that he was subject to sex offender registration requirements in whichever state he resided: "I am subject to registration requirements as a sex offender in any State or U.S. territory in which I reside, be employed, carry on a vocation, or be a student." *Acknowledgment*, Ex. B. to Motion to Dismiss on Statutory Grounds, Dkt. 61-3. Brockbrader also acknowledged that, if he moved to another state, he must report the change of address to the responsible agency in the state he was leaving and comply with the registration requirements in the new state of residence. *Id.* He registered in the state of Utah in 2001 and apparently continued to register in Utah through 2008. He then apparently moved to Nevada and then Idaho. Brockbrader's travel from Nevada to Idaho allegedly occurred "on or after April 24, 2011."

On July 10, 2012, a grand jury returned a superseding indictment against Defendant William Newel Brockbrader, charging him with failure to register as required by the Sex Offender Registration and Notification Act ("SORNA" or "the Act"), 42 U.S.C. § 16901 et seq. *Superseding Indictment*, Dkt. 30. The Superseding Indictment

**MEMORANDUM DECISION AND ORDER - 2**

charges Brockbrader for violating SORNA in two different ways: (1) because he is a sex offender who was convicted under federal law, and he failed to register and update his registration in violation of 18 U.S.C. § 2250(a)(2)(A); and (2) because he is a sex offender who traveled in interstate commerce "on or after April 24, 2011", and he failed to register and update his registration in violation of 18 U.S.C. § 2250(a)(2)(B). *Id.*

Brockbrader has filed two motions to dismiss the indictment – the first on statutory grounds and the second on constitutional grounds. In his first motion to dismiss on statutory grounds, Brockbrader contends the Superseding Indictment against him should be dismissed because neither provision under subsection (a)(2) of section 2250 can apply in his case. In his second motion, Brockbrader argues that the Superseding Indictment violates the Constitution on its face and as applied to him.

## LEGAL STANDARD

A motion to dismiss challenges the sufficiency of an indictment to charge an offense. *United v. Sampson*, 371 U.S. 75, 78–79 (1962). "An indictment is sufficient if it contains the elements of the charged crime and adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982). In determining the sufficiency of the indictment, the court examines whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, and not whether the government can prove its case. *Id.* at 897. In deciding a motion to dismiss, the court must take the allegations of the indictment as true. *Boyce Motor Lines, Inc., v.* United States, 342 U.S. 337, 343 n. 16

(1952); *United States v. Afshari*, 426 F.3d 1150, 1153 (9th Cir. 2005). An indictment need not allege the government's theory of the case or supporting evidence, but it must state the essential facts necessary to apprise the defendant of the crime charged. *Id.*

Rule 12 of the Federal Rules of Criminal Procedure requires a defendant to challenge a defective indictment prior to trial. Fed.R.Crim.P. 12(b)(3)(A) and (B). Rule 12(b)(2) permits a party to raise "any defense, objection, or request that the court can determine without a trial of the general issue." *Id.* A pretrial motion is generally "capable of determination" before trial if it involves questions of law rather than fact. *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The trial court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, but it may not invade the province of the jury in deciding a pretrial motion to dismiss. It is also well established that "[a] motion to dismiss is not a proper way to raise a defense." *United States v. Snyder*, 428 F.2d 520, 522 (9th Cir. 1970).

## ANALYSIS

1.  **Legal Background**

    **A.** *The Jacob Wetterling Act*

The Jacob Wetterling Act was enacted by Congress in 1994 and is commonly referred to as "Megan's Laws."  42 U.S.C. § 14071. The Jacob Wetterling Act provided federal funding to states that enacted sex offender registration laws. It also created a federal misdemeanor failure to register offense punishable by up to one year imprisonment for sex offenders who failed to register in a state where they resided, worked, or were a

student. 42 U.S.C. § 14072(f). By 1996, all states had enacted Megan's Laws in some form. *See Smith v. Doe*, 538 U.S. 84, 90 (2003).

### B. *SORNA*

Congress enacted SORNA on July 27, 2006 as part of the Adam Walsh Child Protection and Safety Act. Pub. L. 109–248, Tit. I, 120 Stat. 590. SORNA's stated purpose is to "establish[ ] a comprehensive national system for the registration of sex offenders." 42 U.S.C. § 16901. "Since 1994, federal law has required states, as a condition for the receipt of certain law enforcement funds, to maintain federally compliant systems for sex-offender registration and community notification." *Carr v. United States*, 130 S.Ct. 2229, 2235 (2010). In an effort to make these state schemes more effective, SORNA expanded the information that states must collect and maintain in their sex offender registries, created a federal registration requirement, and criminalized the failure to register. 42 U.S.C. §§ 16901, 16913, 16914.

SORNA has provisions that apply to states and other provisions that apply to individuals. The Walsh Act applies to each state, the District of Columbia, native American tribal territories, and other United States territories. *See* § 16911(10), defining jurisdiction for purposes of the SORNA. Each jurisdiction had until July 27, 2009 to substantially comply with the requirements of SORNA or lose part of its federal funding. 42 U.S.C. §§ 16924(a), 16925(a). SORNA requires states to implement sex offender registries, which must include standard information and be compatible with a national electronic data base. 42 U.S.C. §§ 16912, 16918, 16919.

In addition to establishing a national sex offender registration system, SORNA requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). SORNA defines the term "sex offender" as "an individual who was convicted of a sex offense" and classifies all sex offenders into three different categories. 42 U.S.C. § 16911(1)-(4). A "sex offense" is "a criminal offense that has an element involving a sexual act or sexual contact with another." *Id.*; § 16911(5)(A)(I). A sex offender must initially register before completing a period of imprisonment, or not later than three business days after being sentenced if not sentenced to imprisonment. 42 U.S.C. § 16913(b).

Section 16913(d) of SORNA delegates authority to the Attorney General of the United States to specify the applicability of SORNA's requirements to sex offenders convicted before July 27, 2006, when SORNA took effect, its implementation in a particular jurisdiction, and also to prescribe rules for the registration of any sex offender unable to comply with the initial registration provisions of SORNA.

On February 28, 2007, the Attorney General promulgated an interim rule applying SORNA to all sex offenders regardless of when they were convicted. *See* Applicability of the Sex Offender Registration and Notification Act, 72 Fed.Reg. 8894 (Feb. 28, 2007) (codified at 28 C.F.R. § 72 (2007)). On May 30, 2007, the Department of Justice issued proposed guidelines for interpreting SORNA, ("SMART Guidelines"), 72 Fed.Reg. 30,210 (May 30, 2007). 28 C.F.R. § 72.3.

SORNA also created a new federal offense for failure to register, codified at 18 U.S.C. § 2250(a), which made failure to register as a sex offender a felony and punishable with a maximum penalty of up to ten years imprisonment and a $250,000 fine. Section 2250(a) covers any person who (1) "is required to register under [SORNA]"; (2) "travels in interstate or foreign commerce"; and (3) "knowingly fails to register or update a registration." *See Carr*, 130 S.Ct. at 2235.

**2.      Motion to Dismiss on Statutory Grounds**

Brockbrader argues that the Superseding Indictment must be dismissed because neither provision under subsection (a)(2) of section 2250 can apply in this case. He argues first that (a)(2)(B) cannot apply to him in this case because a SORNA prosecution against a federal sex offender such as himself must be instituted under 18 U.S.C. § 2250(a)(2)(A) and not (a)(2)(B). And, second, he argues, (a)(2)(A) cannot apply to him in this case because he fully served his sentence and was unconditionally released from federal custody prior to the enactment of SORNA, and therefore Congress lacked authority to require him to register.

The Court is not persuaded on either point.

**A.** *Section 2250(a)(2)(A) and Section 2250(a)(2)(B) Are Not Mutually Exclusive.*

SORNA requires every sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). It defines a "sex offender" as "an

individual who was convicted of a sex offense" that falls within the statute's defined offenses. 42 U.S.C. § 16911(1) and (5)-(7).

As already discussed, Congress created a criminal offense under SORNA, 18 U.S.C. § 2250(a), to penalize certain sex offenders who knowingly fail to register or update their registration. SORNA's enforcement arm targets two types of sex offenders for failing to register or update their registration: (1) sex offenders convicted of a sex offense under federal law, 18 U.S.C. § 2250(a)(2)(A); and (2) sex offenders who travel in interstate or foreign commerce, 18 U.S.C. § 2250(a)(2)(B).

Nothing in this statutory language makes these two subsections mutually exclusive. Section 2250(a)(2)(B) covers "Whoever… is required to register under [SORNA]" and who travels in interstate commerce. *All* sex offenders are required to register under SORNA, and SORNA defines "sex offender" broadly to include anyone convicted of a sex offense under either federal or state law. This language does not say, or even suggest, that SORNA's criminal enforcement power under subsection (a)(2)(B) is limited to state sex offenders exclusively.

This conclusion coincides with the general rule noted by the government, which allows Congress to "carve out a subset of acts otherwise covered by one penal rule and create a second offense requiring a different proof." *United States v. Parramore,* 720 F.Supp. 799, 803 (N.D. Cal. 1989). And it is not "problematic ... that the two laws which otherwise overlap are grouped under one section number rather than two." *Id.* Without any support in the statutory language or the case law interpreting the statute in the

MEMORANDUM DECISION AND ORDER - 8

manner suggested by the defendant, the Court sees no reason to deviate from this general rule. Brockbrader's status as a federal sex offender does not immunize him from prosecution under section 2250(a)(2)(B) for knowingly failing to register or update his registration after traveling in interstate commerce.

   B. *Congress Has Authority to Punish Brockbrader for Knowingly Failing to Register Even Though He Was Unconditionally Released From Federal Custody.*

Brockbrader argues that the section 2250(a)(2)(A) charge against him should also be dismissed because Congress lacked authority to impose federal registration requirements on him, as he had already been unconditionally released from federal custody at the time SORNA was enacted. Brockbrader leans heavily on the Fifth Circuit decision in *United States v. Kebodeaux*, 687 F.3d 232 (5th Cir. 2012) to support this argument. In *Kebodeaux*, the Fifth Circuit, sitting en banc, analyzed five factors set forth in *United States v. Comstock*, 130 S.Ct. 1949, 1954 (2010), and concluded in a 10-6 vote that "Congress has no Article I power to require a former federal sex offender to register an intrastate change of address after he has served his sentence and has already been unconditionally released from prison and the military." *Id.*

But since Brockbrader filed his motion to dismiss on statutory grounds, the Ninth Circuit issued a decision in *U.S. v. Shoulder*, 696 F.3d 922 (9th Cir. 2012) disagreeing with the Fifth Circuit's opinion in *Kebodeaux*. The defendant in *Shoulder* had been convicted of a sex offense under federal law, and he argued that Congress lacked the Constitutional authority to punish his failure to register under SORNA. *Id.* at 928.

Applying the *Comstock* considerations, the Ninth Circuit joined the Tenth Circuit Court of Appeals in concluding that "SORNA's registration requirement, § 16913, and by extension, the statute penalizing failure to register, § 2250, were within the scope of Congress's authority under the Necessary and Proper Clause." *Id.* at 931 (citing *United States v. Yelloweagle*, 643 F.3d 1275, 1277 (10th Cir. 2011)).

Expressly rejecting *Kebodeaux*, the Ninth Circuit reasoned that SORNA's registration requirement, which is aimed at informing the public of the identity and location of convicted sex offenders, is reasonably related to Congress's authority to ensure the safety of the public:

> Nothing in [the Necessary and Proper Clause] jurisprudence supports *Kebodeaux*'s per se rule that a Congressional enactment cannot be rationally related to implementing an enumerated power if it applies to federal convicts who have been released from custody before the date of the enactment. Rather, as explained above, a registration requirement aimed at informing the public of the identity and location of individuals convicted of sex offenses is reasonably related to Congress's authority to ensure the safety of the public, which in turn flows from its authority to enact and enforce criminal laws.

*Id.* at 932.

Given that the Ninth Circuit has now decided this issue and rejected *Kebodeaux*, this Court likewise rejects Brockbrader's same argument raised here. In accordance with *Shoulder*, this Court finds that Congress had the authority to impose registration requirements under the Necessary and Proper Clause on federally convicted sex offenders like Brockbrader.

### 3.     Motion to Dismiss on Constitutional Grounds

Brockbrader also contends that the Superseding Indictment must be dismissed on constitutional grounds because the SORNA charges against him violate the Fifth Amendment right to due process, the Commerce Clause, the non-delegation doctrine, the Tenth Amendment, and the Ex Post Facto Clause.  Brockbrader acknowledges that the Ninth Circuit has already rejected many of his constitutional arguments, but he makes them here to preserve them for appeal.

In general, statutes are presumed constitutional. *United States v. Morrison*, 529 U.S. 598, 608 (2000). A facial challenge of a statute is "the most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745 (1987). To prevail on a facial challenge to the constitutionality of a statute, a litigant must satisfy the heavy burden of showing that "no set of circumstances exists under which the [a]ct would be valid." *Id*.  It is not enough to show that an act "might operate unconstitutionally under some conceivable set of circumstances." *Id.* An "as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case." *Id.*

In this case, for those issues already decided, this Court adheres to Ninth Circuit precedent rejecting those arguments. The Court also rejects Brockbrader's remaining arguments not already decided by the Ninth Circuit.

### A.  *Brockbrader's Fifth Amendment Due Process Rights Were Not Violated.*

Brockbrader first argues that SORNA violates the Due Process Clause of the Fifth Amendment because the government, contrary to its own regulations, failed to give notice of SORNA's registration requirements.

The Due Process Clause of the Fifth Amendment provides, "No person shall ... be deprived of life, liberty, or property, without due process of law." Among other things, the Due Process Clause of the Fifth Amendment safeguards the interest in fundamental fairness through notice and fair warning. *Rogers v. Tennessee*, 532 U.S. 451, 460 (2001). But actual notice of the federal requirement to register under SORNA is not necessary for purposes of the Due Process Clause – knowledge of a duty to register suffices. *See United States v. Crowder*, 656 F.3d 870, 876-77 (9th Cir. 2011) (holding that notice of state registration requirement is sufficient), and *United States v. Elkins*, 683 F.3d 1039, 1050 (9th Cir. 2012)(holding that on this issue, "[o]ur opinion in Crowder is controlling"). Brockbrader's acknowledgment and execution of Utah and Nevada registration and address verifications, both before and after the enactment of SORNA, therefore suffices to satisfy the Due Process clause.

Brockbrader makes a related argument that Nevada and Idaho's failures to implement SORNA-compliant sex offender registries precludes a SORNA prosecution against him.  As Brockbrader acknowledges, however, the Ninth Circuit has held otherwise.  In *United States v. Elkins*, the Ninth Circuit held "the federal government's prosecution of an alleged violation of SORNA is not dependent on the individual state's

implementation of the administrative portion of SORNA." 683 F.3d 1039, 1046 (9th Cir. 2012).  Indeed, "the circuit courts are in accord on this issue." *Id.*

Likewise, in this case, the fact that Nevada and Idaho have not yet met their obligations under SORNA is of no consequence in determining whether it was possible for Brockbrader to meet his own obligations under the Act.  SORNA defines a "sex offender registry" as "a registry of sex offenders, and a notification program maintained by a jurisdiction." 42 U.S.C. §16911.  Therefore, the "sex offender registry" referred to in section 16913 is the sex offender registry that a jurisdiction maintains, whether or not it complies with SORNA. Both Nevada and Idaho had state sex offender registries during the relevant time period, and therefore it was not impossible for Brockbrader to register in Nevada or Idaho as he claims.

Finally, Brockbrader argues that SORNA violates Due Process as applied to all Nevada residents, including Brockbrader, because the Nevada sex offender registration laws were subject to both federal and state court injunctions as a result of Nevada's attempt to implement SORNA. He says this legal uncertainty surrounding sex offender registration prevented any Nevada resident from receiving adequate notice of Nevada's registration requirements.  He also argues that he, specifically, did not receive adequate notice of Nevada's registration laws but maintains this issue is not yet ripe because the factual record is not fully developed.

The Court refuses to reach either of these issues – with respect to Nevada residents generally or Brockbrader specifically.  The Court agrees with Brockbrader that the

**MEMORANDUM DECISION AND ORDER - 13**

factual record must be more fully developed before the Court can decide Brockbrader's as applied Due Process argument. Nor can the Court decide whether SORNA would be unconstitutional as applied to all Nevada residents. Whether a particular Nevada resident could be charged under SORNA would depend on the circumstances of that resident's case and the nature of the charges against him. Just because the Nevada law is or was apparently in flux does not necessarily mean that a current or former Nevada resident convicted of a sex offense would not have knowledge of his duty to register under SORNA.

Indeed, even though the Court defers deciding this issue until the record is more developed, the Court is skeptical of this argument. Brockbrader is charged with failing to register after moving from Nevada to Idaho, and Brockbrader does not and cannot allege that the Nevada litigation affected Idaho's registration requirements. Brockbrader might have a different argument if he was charged under SORNA based solely on his intrastate travel within Nevada. But he was not. Brockbrader therefore faces an uphill battle on this issue.

In short, the Court agrees with prevailing Ninth Circuit precedent that actual notice of the federal requirement to register under SORNA is not necessary for purposes of the Due Process Clause and that knowledge of a general duty to register suffices. Also, Nevada and Idaho's failure to implement a SORNA-compliant registration system prior to Brockbrader's federal sex offender conviction or his travel in interstate commerce did not deprive him of his due process rights to fair notice. And finally, the Court will defer

deciding whether the legal uncertainty surrounding Nevada's post-SORNA registration laws prevented Brockbrader from receiving notice of his duty to register.

### B. *Congress Did Not Lack Authority Under the Commerce Clause to Enact SORNA.*

Brockbrader acknowledges that the Ninth Circuit upheld SORNA against a Commerce Clause challenge in *United States v. George*, 625 F.3d 1124, 1129-30 (9th Cir. 2010). He argues, however, that because the case was vacated and dismissed on other grounds, no binding Ninth Circuit precedent forecloses a Commerce Clause challenge. While it is true that *George* was vacated and dismissed, its reasoning remains persuasive.

As noted in *George*, "Congress may regulate interstate commerce in three situations: (1) 'the use of the channels of interstate commerce'; (2) 'the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities'; and (3) 'those activities having substantial relation to interstate commerce.'" *Id.* at 1129 (quoting *United States v. Lopez,* 514 U.S. 549, 558-59 (1995)). The court in *George* upheld Congress' Commerce Clause power to impose SORNA's registration requirements for sex offenders – who were convicted of a federal sex offense or who move in interstate commerce – as reasonably aimed at regulating persons or things in interstate commerce and use of channels of interstate commerce. *Id.* at 1129-30. This Court agrees with the reasoning in *George*, and therefore rejects Brockbrader's argument that Congress lacked the authority under its broad Commerce Clause power to enact SORNA.

### C. *Congress Did Not Violate the Non-Delegation Doctrine by Leaving Retroactivity to the Attorney General's Discretion.*

Brockbrader also argues that he should be relieved of his responsibility to register because Congress improperly delegated to the Attorney General the authority to specify SORNA's applicability to offenders convicted before the Act's passage.

Under the non-delegation doctrine, "Congress may not constitutionally delegate its legislative power to another branch of Government." *Touby v. United States*, 500 U.S. 160, 165 (1991). But proving a non-delegation violation is an uphill battle. In the past 80 years, the Supreme Court has found only two instances where Congress impermissibly delegated legislative powers to another branch. *See Panama Refining Co. v. Ryan,* 293 U.S. 388 (1935); *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495 (1935). "So long as Congress lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power." *Id*. at 165 (internal quotations omitted).

Although the Ninth Circuit has not decided whether Congress improperly delegated its legislative authority to the Attorney General with respect to SORNA, various other courts have addressed this same argument and reached the same conclusion: Congress did not unconstitutionally delegate its legislative powers to the Attorney General.. *See, e.g., United States v. Benevento*, 633 F. Supp. 2d 1170, 1184 (D. Nev. 2009) (citing cases).

As these cases hold, Congress provided an intelligible principle to guide the Attorney General. *Id.* Congress set forth all of SORNA's substantive registration

requirements, 18 U.S.C. §§ 16911 et seq., and Congress merely gave the Attorney General the authority to specify the applicability of SORNA to a certain class of individuals – those sex offenders convicted before its implementation on July 27, 2006, 18 U.S.C. § 16913(d). Section 16913(d) also allows the Attorney General to prescribe rules for sex offenders who are unable to initially register. The Attorney General's discretion in this regard is constrained by the principles expressed in SORNA, which seeks to create a comprehensive national system for the registration of sex offenders. Moreover, the applicability of SORNA to the class of individuals described in section 16913(d) is ultimately determined by the courts. Thus, SORNA does not violate the non-delegation doctrine.

### D. *SORNA Does not Infringe on States' Rights.*

Brockbrader next argues that SORNA violates the Tenth Amendment and principles of federalism because it forces state officials to enforce a federal regulatory system. This argument, however, is based on a false premise: SORNA does not command state officers or their political subdivisions to implement SORNA.

In *Printz v. United States*, 521 U.S. 898, 935 (1997), the Supreme Court struck down a law requiring local law enforcement officials to conduct background checks of prospective handgun purchasers. In striking down the law, the Supreme Court held, "[t]he Federal Government may neither issue directives requiring the states to address particular problems, nor command the States' officers, or those of their political subdivisions, to

administer or enforce a federal regulatory program." *Id.* But SORNA violates neither of these principles.

SORNA does not require states to do anything more than what each state already does under its current sex offender registration laws. Instead, SORNA provides financial incentives to states to amend their existing sex offender registries to make them SORNA compliant. And Congress did not violate the Tenth Amendment by giving states financial incentives to bring their individual sex offender registration systems in compliance with SORNA's registration requirements. *See, e.g., United States v. Waybright,*5 61 F.Supp.2d 1154, 1173–74 (D.Mont. 2008).

### E. *SORNA Does Not Violate the Ex Post Facto Clause.*

Finally, Brockbrader argues that SORNA's enforcement against him violates the Ex Post Facto Clause because he was convicted and released from federal custody prior to SORNA's enactment in 2006. Brockbrader acknowledges that the Ninth Circuit decided this issue in *United States v. Elkins*, 683 F.3d 1039, 1045 (9th Cir. 2012), but makes the argument to preserve it for appeal.

Article I, Section 9 of the Constitution prohibits an ex post facto law where the law (1) imposes a greater punishment on a defendant than when he was convicted of the underlying offense; (2) makes a punishment for a crime greater than it was when it was committed; or (3) deprives a defendant of a defense available at the time the act was committed. *Collins v. Youngblood*, 497 U.S. 37, 45-46 (1990). For a criminal penal law to be ex post facto, it must be retrospective and disadvantage the offender affected by it.

*Weaver v. Graham*, 450 U.S. 24, 29 (1981). "A law is retrospective if it changes the legal consequences of acts completed before its effective date." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (internal quotation omitted).

In *Elkins,* the Ninth Circuit joined its sister circuits in holding that requiring a person to register under SORNA based on a conviction entered prior to SORNA's enactment does not violate the Ex Post Facto Clause because the duty to register is a continuing offense and not a one-time crime. 683 F.3d at 1045.  Brockbrader's arguments to the contrary are to no avail in the face of this Ninth Circuit precedent.  Accordingly, the Court will not dismiss the Superseding Indictment based on Brockbrader's Ex Post Facto Clause arguments.

## ORDER

**IT IS ORDERED that:**

1. Defendant William Newel Brockbrader's Motion to Dismiss on Statutory Grounds (Dkt. 61) is DENIED.

2. Defendant William Newel Brockbrader's Motion to Dismiss on Constitutional Grounds (Dkt. 62) is DENIED.

DATED: November 15, 2012

B. Lynn Winmill  
Chief Judge  
United States District Court